# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE

JOANNA KRUPA, KIMBERLY COZZENS
a/k/a KIM COZZENS, JESSICA HINTON
a/k/a JESSA HINTON, TIFFANY GRAY
a/k/a TIFFANY TOTH, LINA POSADA,
LUCY PINDER, JAMIE MIDDLETON a/k/a
JAMIE EASON, BROOKE JOHNSON a/k/a
BROOKE TAYLOR, NAJOME COLON
a/k/a GIA MACOOL and MEGAN VOGT
a/k/a MEGAN DANIELS,

                Plaintiffs,

      - against -

MENAGES, INC d/b/a MENAGES CLUB,

                Defendant.

Case No.

Plaintiffs JOANNA KRUPA, KIMBERLY COZZENS a/k/a KIM COZZENS, JESSICA HINTON a/k/a JESSA HINTON, TIFFANY GRAY a/k/a TIFFANY TOTH, LINA POSADA, LUCY PINDER, JAMIE MIDDLETON a/k/a JAMIE EASON, BROOKE JOHNSON a/k/a BROOKE TAYLOR, NAJOME COLON a/k/a GIA MACOOL and MEGAN VOGT a/k/a MEGAN DANIELS, (collectively, "Plaintiffs"), file this Complaint against MENAGES, INC, d/b/a MENAGES CLUB ("Defendant") respectfully allege as follows:

## BACKGROUND

1.     This is an action for damages and injunctive relief relating to Defendant's misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their swinger's club, Menages Club located at 701 Drexel St, Nashville, Tennessee 37203 (**hereinafter referred to as the "Swinger's Club" or "Menages"**).

2.     As detailed below, Defendant's misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43

of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising; c) Violation of the Tennessee Personal Rights Protection Act of 1984, T.C.A. §§ 47-25-1101 to 47-25-1108 "TRPA" or "ELVIS Act"; d) Common Law Right of Publicity; e) Violation of the Tennessee Consumer Protection Act of 1977, T.C.A. 47-18-101 to 47-18-570; f) Defamation; g) Negligence/Respondeat Superior; h) Conversion; i) Unjust Enrichment; and j) Quantum Meruit.

3.    In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5.    This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.    Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.    According to publicly available records, Defendant MENAGES, INC, is a corporation formed under the laws of the state of Tennessee, with its principal place of business located at 5054 Macarthur Ave, Murfreesboro, Tennessee, 37129. Upon information and belief, MENAGES, INC operates Menages Club, which is located at 701 Drexel St, Nashville, Tennessee 37203.

8.    Venue is proper in the United States District Court for the Middle District of Tennessee because Defendant's principal place of business is located in Nashville, Tennessee, (Davidson County).

9.    A significant portion of the alleged causes of action arose and accrued in Nashville, Tennessee and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Nashville, Tennessee.

**PARTIES**

*Plaintiffs*

10.     Plaintiff Joanna Krupa ("Krupa") is a well-known professional model, and a resident of Los Angeles County, California.

11.     Plaintiff Kimberly Cozzens a/k/a Kim Cozzens ("Cozzens") is a well-known professional model, and a resident of Santa Clara County, California.

12.     Plaintiff Jessica Hinton a/k/a Jessa Hinton ("Hinton") is a well-known professional model, and a resident of Los Angeles County, California.

13.     Plaintiff Tiffany Gray a/k/a Tiffany Toth ("Gray") is a well-known professional model, and a resident of Orange County, California.

14.     Plaintiff Lina Posada ("Posada") is a well-known professional model, and a resident of San Bernardino County, California.

15.     Plaintiff Lucy Pinder ("Pinder") is a well-known professional model, and a resident of England.

16.     Plaintiff Jamie Middleton a/k/a Jamie Eason ("Middleton") is a well-known professional model, and a resident of Harris County, Texas.

17.     Plaintiff Brooke Johnson a/k/a Brooke Taylor ("Taylor") is a well-known professional model, and a resident of Santa Barbara County, California.

18.     Plaintiff Najome Colon a/k/a Gia Macool ("Colon") is a well-known professional model, and a resident of Orange County, Florida.

19.     Plaintiff Megan Vogt a/k/a Megan Daniels ("Daniels") is a well-known professional model, and a resident of Orange County, California.

*Defendant*

20.     Defendant, MENAGES, INC is a corporation formed under the laws of the state of Tennessee and registered to conduct business in Tennessee. During times relevant to this action, MENAGES, INC operated Menages Club.

21.     Service of process may be perfected upon Defendant MENAGES, INC d/b/a

Menages Club by serving the registered agent for service of process, John H. Morris, who can be located at 110 Cude Lane, Murfreesboro, TN 37129.

<u>**FACTUAL ALLEGATIONS**</u>

22.     Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

23.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

24.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendant to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendant.

25.     In the case of each Plaintiff, this apparent claim was false.

26.     Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

27.     No Plaintiff has ever received any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

28.     Further, in certain cases Defendant misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

29.     Krupa is, and at all times relevant to this action was, a Polish American model, actress, and dancer. She was named the "Sexiest Swimsuit Model in the World" and has appeared

on the cover of magazines such as Personal, Steppin' Out, Envy, Shape, FHM, Stuff, Inside Sport, Teeze, Maxim, and twice for Playboy. Krupa has also graced the covers of South African GQ, and the Polish editions of Cosmopolitan, InStyle, Glamour, and Grazia. Krupa was voted "Model of the Year" in Maxim's 2004-2005 German edition and was ranked #55 in Maxim's "Hot 100" 2011 edition and was voted "Model of the Year" in Maxim's 2004-2005 German edition. She has appeared on the cover of Playboy magazine twice, modeled for PETA, and founded an animal rescue group, Angels for Animal Rescue, with her friend Gabi Gutierrez. In addition, Krupa has appeared in "The Underground Comedy Movie" (1999) (2010 re-issue), "Planet of the Apes" (2001), "The Man Show" (2002–2003), the action film "Max Havoc: Curse of the Dragon," (2004), "Las Vegas" episode "Degas Away with It" (2004), "CSI: Crime Scene Investigation" episode "Kiss-Kiss, Bye-Bye" (2006), "The Dog Problem" (2006), "Scary Movie 4" (2006), "Ripple Effect" (2007), "Skinner Box" (2007),the television show "Superstars" (June 2009), and in Season 9 of "Dancing with the Stars." (2009), "Szymon Majewski Show" (Polish TV talk show) (2010), Krupa was a cast member for the reality TV show "The Real Housewives of Miami" (2012–2013), "Ridiculousness" (2014), and has been the host and head judge in Poland's "Next Top Model" since 2010. She has over 1 million followers Facebook followers, over 1.8M Instagram followers, and almost 811,000 Twitter followers.[1]

30.     That we know of, Krupa is depicted in the photo in Exhibit "A" to promote Menages on its X and Facebook pages. This Image was intentionally altered to make it appear that Krupa was either an employee working at Menages, that she endorsed Menages, or that she was otherwise associated or affiliated with Menages.

31.     Krupa has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

---

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

32.     Cozzens is a model and actress who has appeared on an Old Spice national commercial, as well as a New Amsterdam Vodka national commercial. She has modeled for campaigns with Guess, Old Spice, Grey Goose, Sephora Cosmetics, Con Air Hair Tools, Sketcher Shoes, and many more. She has also modeled for Maxim magazine, Sandals Resort, Dodge, and Pepsi to name a few. Kim in total, has signed with 12 top agencies internationally, two of them being LA Models and LATALENT.

33.     That we know of, Cozzens is depicted in the photo in Exhibit "B" to promote Menages on its X and Facebook pages. This Image was intentionally altered to make it appear that Cozzens was either an employee working at Menages, that she endorsed Menages, or that she was otherwise associated or affiliated with Menages.

34.     Cozzens has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

35.     Hinton was discovered by a talent manager at a wedding at age 14. By age 16 she locked in three national TV commercials and made guest appearances on Baywatch and 7th Heaven. Hinton expanded her portfolio to include runway modeling and print campaigns at 18. In 2010, Hinton was the face of the Palms Hotel & Casino's ad campaign. She then pursued TV personality roles hosting for Victory Poker, and Top Rank Boxing interviewing the likes of Manny Pacquiao and Shane Mosley. In 2011, she was selected as July's Playmate of the Month becoming one of the most popular Playmates of that year. She was the center piece of an ad campaign for Milwaukee's Best Beer in conjunction with Playboy Enterprises. Hinton also attained spokesmodel roles for Affliction Clothing, Enzo, Milano Hair Products, REVIV Wellness Spa, and Protein World. She has ongoing modeling contracts with Rhonda Shear Shapewear, Leg Avenue, and Roma Costume, in addition to hosting a Los Angeles, CA television station KTLA. Her images have appeared on billboards, magazines, posters, and multiple forms of electronic media. Hinton has been a featured front cover model gaining attraction for magazines such as

FHM, Kandy, MMA Sports, Guitar World, and Muscle & Fitness. She was named Creative Director for MAJR Media and was given part ownership for her role with the company. Hinton has successfully accomplished elite status as a social media celebrity with a combined total of over 3.8 million followers on Facebook, Instagram and X (formerly known as Twitter).

36.     That we know of, Hinton is depicted in the photo in Exhibit "C" to promote Menages on its Facebook and Instagram page. This Image was intentionally altered to make it appear that Hinton was either an employee working at Menages, that she endorsed Menages, or that she was otherwise associated or affiliated with Menages.

37.     Hinton has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

38.     Gray is an extremely successful model that takes great pride in holding the prestigious title of a Playboy Playmate. Gray was the Playboy "Cyber Girl of the Month" for May 2006. She then went on to pose for three pictorials under Playboy's Fresh Faces. Moreover, she has not only been featured in such magazines as Super Street Bike, Import Tuner, Sport Truck, Iron Man, Muscle & Fitness, Guitar World, Ripped, Seventeen, Pump, and Maxim, but has also posed for various catalogs. Gray has even appeared on television shows such as Tosh.O and The Daily Habit. She has booked jobs shooting for lingerie companies such as Shirley of Hollywood, Seven Til Midnight, Elegant Moments, and Jvalentine. She is also a real estate agent in Southern California and part owner of Sugar Taco, a plant-based restaurant located in Los Angeles. Gray currently has over 3.7 million Facebook followers, 1.2 million Instagram followers, and over 368.7,000 X (formerly known as Twitter) followers.

39.     That we know of, Gray is depicted in the photo in Exhibit "D" to promote Menages on its Facebook page. This Image was intentionally altered to make it appear that Gray was either an employee working at Menages, that she endorsed Menages, or that she was otherwise associated or affiliated with Menages.

40.     Gray has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

41.     Posada is a fashion model and designer. A native of Colombia, Posada is best known as a model for the Bésame and Espiral lingerie collections. Posada has also modeled for Paradizia Swimwear, Babalu Swimwear, Irgus Swimwear, Ujeans, as well as many others. She currently has 102,000 Instagram followers, 4,120 YouTube subscribers, 17,300 Facebook followers, and over 5,200 Twitter followers.

42.     That we know of, Posada is depicted in the photo in Exhibit "E" to promote Menages on its X page. This Image was intentionally altered to make it appear that Posada was either an employee working at Menages, that she endorsed Menages, or that she was otherwise associated or affiliated with Menages.

43.     Posada has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

44.     Pinder is, and at all times relevant to this action was, an English model, actress, host, businesswoman, and one of Great Britain's most famous glamour models. Pinder has featured in publications such as FHM, Nuts, Loaded, The Daily Star, and hundreds of others. Pinder has appeared on FHM's list of the "100 Sexiest Women in the World" in 2005, 2006, and 2007. She was a guest columnist in Nuts, entitled "The Truth About Women" and appeared on the final edition of the Nuts magazine cover. Pinder has collaborated with major brands such as Unilever (Lynx) and Camelot (National Lottery) among others, and on large national and international advertising campaigns. Pinder has an established an acting career with many TV appearances and Film credits. She has appeared on shows such as I'm Famous and Frightened, Soccer AM, Weakest Link, Nuts Tv (host) MTV's TMF (presenter), Hotel Babylon, and Team and Bo! in the USA.

Pinder was also a contestant on Celebrity Big Brother. Pinder starred in films such as The Seventeenth Kind, Age of Kill, and Warrior Savitri. Pinder works closely with a number of Wildlife charities and is involved in fundraising for Tiger Time, The David Shepherd Wildlife Foundation and International Animal Rescue. Pinder has also worked with Help for Heroes appearing in the Hots Shots fund raising calendar and supported Male Cancer Awareness Campaign taking part in their MCAC London Strut awareness initiative. She also visited troops in Afghanistan in 2007. Pinder's own annual calendar continues to be one of the bestselling model calendars years after year and enhances Pinder's status as an elite class of Social Media Influencers with a combined total of over 2 million followers on Facebook, Instagram, and X (formerly known as Twitter).

45. That we know of, Pinder is depicted in the photo in Exhibit "F" to promote Menages on its X and Facebook pages. This Image was intentionally altered to make it appear that Pinder was either an employee working at Menages, that she endorsed Menages, or that she was otherwise associated or affiliated with Menages.

46. Pinder has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

47. Eason is an American model, Fitness model, businesswoman, nutritionist, and spokeswoman. Middleton is a former NFL cheerleader and winner of The World's Fittest Model Competition. She graduated from Texas A&M University with a degree in speech communication/organization. Middleton has been the featured subject and cover girl on many fitness and women's magazines. She currently a full-time spokesperson for Bodybuilding.com and has her own line of swimwear as well as a supplement line with Labrada nutrition. Middleton is a devout Christian and is married to Michael Middleton who is a worship leader in their church. Middleton has more than 2 million fans between Facebook, Instagram and Twitter.

48. That we know of, Middleton is depicted in the photo in Exhibit "G" to promote

Menages on its X page. This Image was intentionally altered to make it appear that Middleton was either an employee working at Menages, that she endorsed Menages, or that she was otherwise associated or affiliated with Menages..

49.    Middleton has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

50.    Taylor Is a world-renowned model who has appeared in magazines such as FHM, Maxim, Viva Glam, and Stuff. She has also appeared in commercials for brands like Fredrick's of Hollywood, Coors Light, and Budweiser. In addition, Taylor has been featured in countless other catalogs, television commercials, and shows.

51.    That we know of, Taylor is depicted in the photo in Exhibit "H" to promote Menages on its Facebook and X page. This Image was intentionally altered to make it appear that Taylor was either an employee working at Menages, that she endorsed Menages, or that she was otherwise associated or affiliated with Menages.

52.    Taylor has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

53.    Colon is, and at all times relevant to this action was, a glamour and swimwear model, spokeswomen, and entrepreneur. Colon has modeled for American Curves Magazine, ProRider, and was the BikiniTeam.com model of the month for March 2018. She also appeared as Playboy's Playmate of the Month in their November 2014 issues. Colon is also an active spokesperson and host, serving as the spokesmodel for the CoolFitTV YouTube channel and is a designer and entrepreneur, selling her swimwear lines, as well as other products, at www.giamacool.com. Colon has 2.6 million followers on Instagram, over 5.4 million followers on Facebook, and over 204,000 followers on Twitter.

54.     That we know of, Colon is depicted in the photo in Exhibit "I" to promote Menages on its Facebook page. This Image was intentionally altered to make it appear that Colon was either an employee working at Menages, that she endorsed Menages, or that she was otherwise associated or affiliated with Menages.

55.     Colon has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

56.     Daniels is an International DJ and model. As a model Daniels has featured in ad campaigns with Snoop Dogg, Famous Stars and Straps, Radii Shoes, and Gears of War. Daniels has also graced the covers of many magazines including American Curves Magazine, Heavy Metal magazine, Ink Junkie Magazine, Outlaw Biker Magazine, Tattoo Magazine, Obscene Magazine, Strobe Magazine, Tattoos for Men, Lowrider Magazine, Rebel Ink Magazine, Street King Magazine, Tattoo Feuerwerk, Maxim's Best of the Web, Muscle Mag, Inked Magazine, Alt Girls Magazine, and many more. As a DJ Daniels has toured all over the US and International destinations. Some of the cities she has headlined include Hong Kong, Macau, Istanbul, Mumbai, Saint Martin, Saint Croix, Edmonton, Montreal, Quebec City, Shanghai, Shenzhen, Calgary, Las Vegas, Chicago, Los Angeles, Hollywood, Detroit, San Francisco, San Jose, San Diego, Milwaukee, Myrtle Beach, Salt Lake City, Oklahoma City and dozens more. Daniels has Headlined major Festivals including the Illuminate festival in Mumbai, India and Bump Music Festival in Stockton, CA. Daniels has played at many prestigious venues including Avalon (Hollywood), Vanity (Las Vegas), Blok (Hollywood), Sutra (Newport Beach), Artisan (Las Vegas) and Vertigo (Chicago).

57.     That we know of, Daniels is depicted in the photo in Exhibit "J" to promote Menages on its X and Facebook page. This Image was intentionally altered to make it appear that Daniels was either an employee working at Menages, that she endorsed Menages, or that she was otherwise associated or affiliated with Menages.

58.     Daniels has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendant's Business Activity and Misappropriation***

59.     Defendant operates (or operated, during the relevant time period,) a so-called Swinger's Club, where they are (or were) engaged in the business of selling alcohol and food in a sexually-charged atmosphere where couples are encouraged to swap partners and engage in sexual activity on the premises.

60.     Defendant owns, operates, and controls Menages' social media accounts, including its Facebook, Twitter, and Instagram accounts.

61.     Defendant used Menages' Facebook, Twitter, and Instagram accounts to promote Menages', and to attract patrons.

62.     Defendant did this for their own commercial and financial benefit.

63.     Defendant has used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Menages, endorsed Menages, or was otherwise associated or affiliated with Menages.

64.     Defendant used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Menages to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

65.     Defendant was well aware that none of the Plaintiffs have ever been affiliated with or employed by Menages, and at no point have any of the Plaintiffs ever endorsed Menages or otherwise been affiliated or associated with Menages.

66.     All of Defendant's activities, including their misappropriation and republication of

Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

67.     Defendant has never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

68.     Plaintiffs have never received any benefit from Defendant's unauthorized use of their Images.

**Standard Business Practices in the Modeling Industry**

69.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

70.     The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

71.     Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

**Defendant's Misappropriation of Plaintiffs' Images**

72.     Defendant *was* aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Menages.

73.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

74.     In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Menages.

75.     At no point was any Plaintiff ever contacted by any Defendant, or any

representative of any Defendant, to request the use of any of Plaintiffs' Images.

76.    No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

77.    Defendant never paid any Plaintiff for its use of her Images on any promotional materials, including Menages' website, Twitter, Facebook, or Instagram accounts.

78.    Defendant used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

79.    Upon information and belief, the above acts of the Defendant were fraudulent, intentional and/or malicious and entitle Plaintiffs to punitive damages.

## FIRST CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)

80.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

81.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Plaintiffs from the conduct described herein.

82.    Defendant used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendant's establishment, or endorsed Defendant's businesses. This was done to promote and attract clientele to Defendant's establishment, and thereby generate revenue for Defendant.

83.    Thus, this was done in furtherance of Defendant's commercial benefit.

84.    Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendant's customers are the exact demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggests the characteristics of their

product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

85.     Both Plaintiffs and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

86.     As such, an unauthorized use of Plaintiffs' image to promote an establishment created an undeniable confusion in Defendant's consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendant used Plaintiffs' image for advertising purposes, that is to promote its business enterprises, as such, Defendant's unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness

87.     Defendant's use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendant's establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

88.     Despite the fact that Defendant was at all times aware that Plaintiffs neither worked at, nor endorsed its establishment, nevertheless, they used Plaintiffs' image in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendant's establishment.

89.     Defendant knew that its use of Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendant's establishment.

90.     Upon information and belief, Defendant's use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

91.     As a direct and proximate result of Defendant's actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendant, the nature

of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendant.

92.    Further, any failure, neglect or default by Defendant will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

93.    Due to Defendant's unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

94.    WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

**SECOND CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising)**

95.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

96.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, et seq. applies to Defendant and protects Plaintiffs from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

97.    Defendant used Plaintiffs' image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise

affiliated with Defendant's establishment, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use their image in order to advertise, promote, and market Defendant's businesses, Defendant's establishment, and/or Defendant's establishment events and activities.

98.     Defendant's use of Plaintiffs' image, likeness and/or identity to advertise, promote and market Defendant's businesses, Defendant's establishment, and/or Defendant's events and activities as described in this Complaint was false and misleading.

99.     Defendant's unauthorized use of Plaintiffs'' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

100.     Defendant's false advertising described above have the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant's establishment, as to the general quality of attendees and participants of Defendant's establishment and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant establishment events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities.

101.     Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or was otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, or Defendant establishment events and activities, or consented to or authorized Defendant's usage

of their image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities.

102.     Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant's establishment, visit Defendant's establishment, and participate in events at Defendant's establishment and had a material effect and impact on the decision of members and prospective members and participants to join Defendant's establishment, visit Defendant's establishment and take part in the events at Defendant's establishment.

103.     Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's establishment and their activities and attracting clientele to Defendant's establishment.

104.     Defendant knew or should have known that their unauthorized use of Plaintiffs' image, likeness and/or identity would cause consumer confusion as described in this Complaint.

105.     Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

106.     Defendant's wrongful conduct as described herein was willful.

107.     As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

108.     Defendant had actual or constructive knowledge of the wrongfulness of its conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

109.     The method and manner in which Defendant used the image of Plaintiffs further evinces that Defendant was aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendant's use of its image to advertise Defendant's businesses.

18

110.    Defendant has caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the establishment lifestyle and activities at Defendant's establishment.

111.    Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
**(Violation of the Tennessee Personal Rights Protection Act of 1984, T.C.A. §§ 47-25-1101 to 47-25-1108 "TRPA" or "ELVIS Act")**

112.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

113.    Each Plaintiff has identified herself in each of Plaintiffs' Images as set forth in the exhibits attached to this complaint and each Plaintiff alleges upon information and belief that her image is readily identifiable in each photograph.

114.    Plaintiffs' Images have not been copyrighted under federal law.

115.    Plaintiffs have a right to control the commercial use of their names, images, and likenesses. Under the Tennessee Personal Rights Protection Act of 1984, T.C.A. §§ 47-25-1101 to 47-25-1108 "TRPA" or "ELVIS Act" the unauthorized use of a person's image or likeness for purposes of advertising goods or services or fundraising/soliciting donations, among other purposes is unlawful.

116.    Defendant misappropriated Plaintiffs' likenesses by publishing their image and likeness on Defendant's website or related social media accounts as part of Defendant's advertising campaign.

117.    Defendant's use and publication of Plaintiffs' Images as set forth in the exhibits attached to this complaint was to advertise their establishment was for the purpose of advertising goods or services.

118.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiffs' image and likeness on various occasions, via

different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

119.    Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

120.    Defendant published, performed, distributed, transmitted or otherwise made available to the public each Plaintiffs' image and likeness with knowledge that the use was unauthorized.

121.    Defendant knew or reasonably should have known that the use of Plaintiffs' Images was unauthorized.

122.    Defendant's use of Plaintiffs' photographs and likenesses did not occur in connection with the dissemination of news or information and was without a redeeming public interest or historical value or for purposes of comment, criticism, scholarship, satire, or parody.

123.    Defendant never obtained Plaintiffs' consent for the use of their images and likenesses.

124.    Defendant's use of each Plaintiffs' photographs and likenesses was willful and deliberate.

125.    As a direct and proximate result of Defendant's scheme to create the false impression that Plaintiffs were affiliated with and/or performed at Defendant's establishment, Defendant enjoyed increased revenues and profits.

126.    As a further direct and proximate result of Defendant's deliberate and willful conduct, Plaintiffs have suffered actual damages in an amount to be established at trial.

127.    Under the Elvis Act, Plaintiffs are entitled to injunctive relief, destruction of any materials created in violation of the law; actual damages, plus any profits that are attributable to the violation.

**FOURTH CAUSE OF ACTION**
**(Common Law Right of Publicity)**

128.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

129.     Defendant has appropriated each Plaintiff's likeness for Defendant's commercial purposes without authority or consent from Plaintiffs.

130.     Defendant misappropriated Plaintiffs' likenesses by publishing their image and likeness on Defendant's website or related social media accounts as part of Defendant's advertising campaign.

131.     Defendant's website and social media accounts were designed to advertise and attract business to Defendant and generate revenue for Defendant.

132.     Plaintiffs are informed and believe and hereon allege that the manner in which Defendant posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendant published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

133.     Plaintiffs are  further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

134.     Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

135.     Upon information and belief, Defendant's use of Plaintiffs' image and likeness did in fact attract clientele and generate business for Defendant.

136.     At no point did any Defendant ever seek or receive permission or consent to use any Plaintiffs image and likeness for any purpose.

137.    Defendant was at all relevant times aware that they had never received any Plaintiffs' permission or consent to use their image and likeness in any medium for any purpose.

138.    At no point did Defendant ever compensate Plaintiffs for its unauthorized use of their image and likeness.

139.    Plaintiffs have been damaged in amounts to be proved at trial.

<u>**FIFTH CAUSE OF ACTION**</u>
**(Violation of the Tennessee Consumer Protection Act of 1977, T.C.A. 47-18-101 to 47-18-570)**

140.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

141.    Defendant operated its website and social media accounts in order to promote Defendant's establishment, to attract clientele thereto, and to thereby generate revenue for Defendant.

142.    As such, Defendant's operation of the website and social media accounts, and its publication of image and likeness thereon, was consumer-oriented in nature and occurred in the trade and commerce with the State of Tennessee.

143.    Defendant publication and use Plaintiffs' image and likeness was in a manner that Plaintiffs gave consent for the use of their Images, and/or created the false impression that Plaintiffs were either strippers working at Defendant's establishment, endorsed the same, or were otherwise affiliated, associated, or connected with Defendant.

144.    As such, Defendant's intent in publishing Plaintiffs' image and likeness was to mislead the public as to Plaintiffs' employment at and/or affiliation with Defendant.

145.    Defendant thus engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce in the state of Tennessee.

146.    Defendant's advertising practices offends the public policy of Tennessee insofar as it constitutes misappropriation of Plaintiffs' property rights in their own image and likeness, and invasion of Plaintiffs' privacy, for Defendant's commercial benefit.

147.     Defendant's advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs worked for, endorsed, or are otherwise affiliated with Defendant.

148.     Defendant advertising practices cause injury to consumers by creating the false impression that Plaintiffs worked for, endorsed, or are otherwise affiliated with Defendant.

149.     There are no benefits to Defendant's advertising practices as set forth hereon except a benefit to Defendant's own commercial interests.

150.     As a result of Defendant's unauthorized and misleading publication of Plaintiffs' image and likeness on its website and social media accounts, each of the Plaintiff's reputations was injured, and each of the Plaintiff's ability to market herself as a model was injured.

151.     As a result of Defendant's unauthorized and misleading use of Plaintiffs' image and likeness, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

## SIXTH CAUSE OF ACTION
### (Defamation)

152.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

153.     As detailed throughout this Complaint, Defendant has published and altered the image and likeness of Plaintiffs in order to promote its establishment to the general public and potential clientele.

154.     Defendant's publication of said image and likeness constitutes a representation that Plaintiffs were either employed by Defendant, that they endorsed Defendant, or that they had some affiliation with Defendant.

155.     None of these representations were true.

156.     In publishing Plaintiffs' Images, it was Defendant's intention to create a false impression to the general public that Plaintiffs worked for, endorsed, or are otherwise affiliated

with Defendant.

157.    Defendant was at least negligent in publishing Plaintiffs' image and likeness because it knew, or should have known, that Plaintiffs were not employed by Defendant, had no affiliation with Defendant, had not consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

158.    In the alternative, Defendant published the image and likeness of Plaintiffs with actual malice because it knew – or reasonably should have known – that  Plaintiffs were not employed by Defendant, had no affiliation with Defendant, had not consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

159.    Despite Defendant's knowledge and awareness of these facts, it nevertheless made the decision to publish Plaintiffs' image and likeness to attract clientele and generate revenue for themselves.

160.    Defendant's publication of Plaintiffs' image and likeness constitutes defamation under Tennessee law because said publication falsely accuses Plaintiffs of having acted in a manner – i.e., worked for, endorsed, or was otherwise affiliated with Defendant's establishment which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

161.    Defendant's publication of Plaintiffs' image and likeness likewise constitutes defamation per se under Tennessee law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

162.    This is because any company or brand that sought to hire any of the Plaintiffs  as a company or brand representative would be less likely to do so upon learning that she was working for or endorsing the business, an inference which Defendant's publication of the image and likeness support.

163.    Defendant's publication of Plaintiffs' image and likeness likewise constitutes

defamation per se under Tennessee law because, insofar as said publication falsely portrays each of the Plaintiffs as Defendant's employee, it imputes unchastity to her.

164.    Defendant's publication of Plaintiffs' image and likeness caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### SEVENTH CAUSE OF ACTION
**(Negligence/Respondeat Superior)**

165.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

166.    Plaintiffs are further informed and believe and hereon allege that Defendant maintains or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and nonconsensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

167.    Further, Defendant should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in its advertising practices.

168.    Defendant owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

169.    Similarly, Defendant further owed a duty of care to Plaintiffs to ensure that its promotional and/or advertising materials and campaigns did not deceptively or falsely portray a connection, affiliation, or sponsorship between Plaintiffs and Defendant.

170.    Defendant breached its duty of care to Plaintiffs by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not

unauthorized, non-consensual, or false and deceptive.

171.    Defendant further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Tennessee law, were not violated. Defendant breached their duty of care to Plaintiffs by itst negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

172.    Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Image was published without consent, authorization, or compensation, and done so in a false, misleading and/or deceptive manner.

173.    As a result of Defendant's negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Conversion)

174.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

175.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their image and likeness, and have property interests thereon.

176.    By the conduct detailed above, Defendant converted Plaintiffs' property rights in their image and likeness for its own use and financial gain.

177.    As a result of Defendant's unlawful conversion of Plaintiffs' image and likeness, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Unjust Enrichment)

178.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

179.    As set forth in detail above, Defendant published Plaintiffs' Images in order to

promote the Defendant's establishment to the general public and potential clientele.

180.    Defendant's publication was for the purpose of creating a false impression to the general public that Plaintiffs were either entertainers working at or endorsed the Defendant.

181.    Defendant's purpose in publishing Plaintiffs' Images was to benefit commercially due to its purported association with, employment of, and/or endorsement by Plaintiffs.

182.    Upon information and belief, Defendant did in fact benefit commercially due to its unauthorized use of Plaintiffs' Images.

183.    Defendant has been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendant in attracting clientele to its establishment.

184.    Plaintiffs have not been compensated for Defendant's commercial exploitation of their Images, and thus any financial benefit which Defendant received due to said exploitation is unjust.

185.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### (Quantum Meruit)

186.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

187.    Plaintiffs are each internationally known models who earn their livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

188.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

189.    Although Defendant has availed itself of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at or endorse their establishment, or are otherwise affiliated with their establishment, Defendant has not compensated Plaintiffs.

190.    Plaintiffs are therefore entitled to reasonable compensation for Defendant's unauthorized use of their image and likeness.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendant as follows:

(a)  For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes of Action;

(b)  For an order permanently enjoining Defendant from using Plaintiffs' Images to promote Defendant's Swinger's Club;

(c)  For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117 and T.C.A 47-18-101, *et seq.*;

(d)  For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and T.C.A 47-18-101, *et seq.*;

(e)  For all damages available to Plaintiffs under the Tennessee Personal Rights Protection Act of 1984, T.C.A. §§ 47-25-1101 to 47-25-1108 ("TRPA" or "ELVIS Act");

(f)  For all damages available to Plaintiffs under Tennessee Consumer Protection Act of 1977,T.C.A. 47-18-101 to 47-18-570;

(g)  For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

**/s/ Joe Bednarz, Jr.**
**JOE BEDNARZ, JR., #018540**
**AARON ARMSTRONG, #039610**
**BEDNARZ & BEDNARZ**
660 East Main Street
Hendersonville, TN 37075
(615) 256-0100
*Attorneys for Plaintiffs*